Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5689 | **DATE** | 7/23/2004 |
| **CASE TITLE** | Nicholas Davis, et al vs. Precoat Metals | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 8/18/2004 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' Motion for Partial Summary Judgment [71-1] is denied and Defendant's Cross-Motion for Partial Summary Judgment [66-1],[68-1] is granted. Enter Memorandum Opinion & Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUL 26 2004 date docketed | |
| | Docketing to mail notices. | | 77 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SRB | courtroom deputy's initials | 2004 JUL 23 PM 4:57 date mailed notice | |
| | | Date/time received in central Clerk's Office mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICHOLAS DAVIS, L.C. ALEXANDER, DEON PAGE & GEORGE HOLLINS<br>Plaintiffs,<br><br>v.<br><br>PRECOAT METALS, a division of SEQUA CORPORATION<br>Defendant. | No. 01 C 5689<br><br>Magistrate Judge Nan R. Nolan |

DOCKETED
JUL 26 2004

## MEMORANDUM OPINION & ORDER

Plaintiffs Nicholas Davis, L.C. Alexander, Deon Page and George Hollins have sued their former employer, Precoat Metals ("Precoat"), claiming that Precoat discriminated against them due to their race/national origin and retaliated against them for engaging in statutorily protected activities, thus violating Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. While the lawsuit was pending, Precoat shut down the plant where plaintiffs had been employed. Plaintiffs then filed an amended complaint, adding an allegation that the severance agreement Precoat offered to employees when the plant closed was discriminatory and retaliatory.[1] That severance agreement is the subject of the parties' cross motions for partial summary judgment that are presently before the court. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiffs Davis, Page, Hollins and Alexander ask the court to find that the severance package Precoat offered (1) is discriminatory *per se* under Title VII and/or (2) has a disparate impact on African-American employees. Precoat, on the other hand, asks the court to find as a matter of law that

---

[1]The amended complaint also added two plaintiffs, Tina Williams and Gregorio Zepeda; both Williams and Zepeda subsequently settled their claims.

the severance agreement is neither discriminatory nor retaliatory. More specifically, Precoat asks the court to find that (a) the severance agreement is not facially discriminatory, (b) plaintiffs have offered no evidence of unequal treatment or intentional discrimination or retaliation, (c) plaintiffs' disparate impact claim is not properly before the court, and (d) even if it were, plaintiffs cannot establish that the severance agreement had a disparate impact on African-American employees.[2]

For the reasons explained below, plaintiffs' motion for partial summary judgment is denied and defendant's cross motion for partial summary judgment is granted.

## I. BACKGROUND[3]

Plaintiffs Davis, Alexander, Page and Hollins, who are African-American, were members of the United Steelworkers of America ("Union") while they were employed by Precoat. The terms and conditions of their employment were governed by a Collective Bargaining Agreement ("CBA"). After filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving right-to-sue letters, plaintiffs commenced this lawsuit on

---

[2]Precoat also argues it is entitled to judgment as a matter of law (1) regarding plaintiffs' claim that the severance agreement is discriminatory because plaintiffs failed to join an indispensable party, and (2) regarding plaintiffs' assertion that the severance agreement was negotiated in bad faith because that claim falls within the exclusive jurisdiction of the National Labor Relations Board. Precoat's latter argument strikes the court as misplaced since plaintiffs have no claim pending for failure to negotiate in good faith. Rather, as Judge Holderman previously ruled, the bad-faith allegation is just one fact alleged in support of plaintiffs' racial discrimination claims. (Order of 4.11.2002, denying motion to dismiss.) Regardless, because the court grants summary judgment in favor of Precoat, it finds it unnecessary to address either of these arguments further.

[3]The background facts were taken from the parties' statements of material facts, submitted pursuant to N.D. Ill. Local Rule 56.1. These facts are undisputed unless otherwise noted.

July 21, 2001.[4]

On or about November 30, 2001, Precoat informed the Union and the employees that a decision had been made to close Precoat's Chicago facility and layoff all employees at that facility effective January 31, 2002. Article 25 of the CBA states:

> In the event of liquidation of the Company or a sale in which operations are removed from Chicago, Illinois, and employees have no opportunity to transfer to the new location, the Company agrees that it will promptly notify the Union of its intention. Upon request of the Union, the Company will meet for the purpose of negotiating severance pay and any other conditions affecting employees due to the plant closing or removal.

Pursuant to Article 25, the Union asked to meet with Precoat to negotiate potential severance. Prior to the negotiations, Precoat made a decision to offer severance payments in exchange for releases as a way to settle possible claims, whether filed or not, arising out of the operation of the Chicago facility.[5] Representatives from the Union and Precoat subsequently met several times to negotiate possible severance. During those negotiations, Precoat and the Union exchanged proposals regarding possible severance. Ultimately, Precoat and the Union agreed that all

---

[4] Both Davis' and Alexander's initial EEOC charges are dated September 5, 2000. Page's initial EEOC charge is dated October 10, 2000. The record does not indicate when Hollins filed his EEOC charge.

[5] This fact, set forth in paragraph 11 of Precoat's L.R. 56.1 statement of material facts, is supported by a sworn affidavit from Precoat's Director of Human Resources, John Christopher, explaining Precoat's decision to offer the severance package in exchange for a release. Plaintiffs deny this fact, but their citations to the record fail to refute it. For example, plaintiffs point out that they were the only employees with a pending lawsuit at the time Precoat announced its decision to close the Chicago facility. It does not follow, however, that no other employees had potential claims to release. Nor does plaintiffs' assertion undermine Mr. Christopher's sworn statement that Precoat decided to offer a severance package in exchange for a release in order to put an end to possible claims relating to the Chicago facility. Because plaintiffs' citations to the record do not refute Mr. Christopher's statement, plaintiffs' denial is not properly supported. In accordance with N.D. Ill. L.R. 56.1(b), the court therefore deems admitted paragraph 11 of Precoat's L.R. 56.1 statement of material facts.

severance payments would be conditioned on the execution of a Waiver and Release Agreement ("Release"). On or about February 11, 2002, the Union and Precoat reached an agreement to amend the CBA ("Agreement") to set severance pay and conditions affecting the Precoat employees. The Agreement states: "The parties acknowledge that during the negotiations that resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to severance pay and other conditions affecting employees due to the plant closure." The Agreement further states: "Individual severance payments will be contingent on <u>each employee</u> signing a severance agreement." (Emphasis in original.)

The Release, agreed to by the Union and Precoat, states that the severance allowance and supplemental payment for health care "are not otherwise due to me, but are provided by [Precoat] in return for the full and complete release of any and all claims by me, as broadly defined by Paragraph 2 of this Agreement."[6] (Release, Defs.' L.R. 56.1 Statement of Material Facts, Ex. B.) Paragraph 2 states, in relevant part, that the employee released, waived and discharged Precoat "from any and all claims of any kind that I may have in any way arising out of my employment with [Precoat]" (subject to an exemption for workers' compensation claims).[7] (*Id.*) "This release includes, but is not limited to, all claims under federal, state or local laws prohibiting age, sex, race, national origin, disability, religion, retaliation, or any other form of discrimination, such as Age Discrimination in Employment Act." (*Id.*)

---

[6]Plaintiffs neither admitted nor denied this fact, opting instead to object on relevance grounds. Plaintiffs were free to raise their objection in addition to, not in lieu of, providing an admission or properly supported denial. This fact is deemed admitted. *See* L.R. 56.1(b). It is also relevant.

[7]There was an exemption for the release for certain workers' compensation claims. The parties agree that as a matter of law, such claims cannot be waived.

4

There were 46 Union employees still working at the Chicago plant when the plant closed on January 31, 2002, including plaintiffs Davis, Alexander and Page. (Plaintiff Hollins, on the other hand, had resigned from Precoat in June 2001.) Of those employees, 14 were African-American, 23 were white and 9 were Hispanic. All 46 employees received the Agreement, together with the attached Release. Only those employees that executed the Release received severance payments. Davis, Alexander and Page, who were the only employees with discrimination claims pending against Precoat when the Agreement was finalized, were the only employees who refused to sign the Release. As a result, they were the only employees who did not receive severance payments.

## II. DISCUSSION

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the movant sets forth its argument, properly supported by the record, that there is no genuine issue of material fact requiring trial, the burden shifts to the nonmovant to identify specific facts that preclude summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," there is no issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. Plaintiff Hollins Has No Claim Based on the Severance Agreement

As an initial matter, the court grants summary judgment against plaintiff Hollins for any and all claims relating to the severance benefits, the Agreement, and the Release. Hollins

5

voluntarily resigned from Precoat in July 2001, several months before Precoat announced the plant closing in November 2001 and before the Agreement was negotiated. As a former employee, Hollins was not eligible for any benefits under the Agreement. Just as an employer cannot be liable under Title VII[8] for failing to promote an employee if that employee is not qualified for the position, *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998), an employer cannot be liable under Title VII for failing to pay severance benefits to a former employee who is not eligible for severance benefits. No reasonable jury could find that Precoat unlawfully denied Hollins severance benefits when he was not even eligible for severance benefits under the Agreement.

## B. The Severance Agreement is Not Facially Discriminatory

Plaintiffs[9] argue that withholding severance benefits from those who refused to release Precoat from Title VII claims constitutes a *per se* violation of Title VII. (Pls.' Mem. Supp. Mot. Summ. J. at 1.) Specifically, plaintiffs argue that they had a contractual right to severance, which they were unlawfully denied. Alternatively, they contend that even if their right to severance was not contractual, the benefits were part and parcel of the employment relationship, and thus, could not be doled out in a discriminatory or retaliatory manner. According to Precoat, however, none of the employees had a contractual right to severance benefits under the CBA prior to negotiation of the Agreement. Further, Precoat argues, the Agreement is not facially discriminatory or

---

[8]The same liability standard applies to retaliation claims under Title VII and Section 1981. *Walker v. Abbott Labs.*, 340 F.3d 471, 474 (7th Cir. 2003). Throughout this opinion, the court's analysis under Title VII thus applies with equal force to plaintiffs' claims under Section 1981.

[9]Given the court's ruling against Hollins, from this point forward, "plaintiffs" refers to only Davis, Page & Alexander.

6

retaliatory because it was offered to every one of the 46 remaining employees, all of whom were required to sign a general release of claims in order to receive severance benefits. The court agrees with Precoat.

Withholding benefits to which an employee is otherwise entitled can support a retaliation claim. *Equal Employment Opportunity Comm'n v. Cosmair, Inc.*, 821 F.2d 1085, 1089 (5th Cir. 1987); *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998). Thus, as plaintiffs correctly argue, "a severance agreement is retaliatory if the employer takes away a severance to which the employee was already entitled." (Pls.' Reply in Support of Mot. Summ. J. at 17.) The problem for plaintiffs, however, is that they were not entitled to severance benefits under the CBA as originally drafted.

Under the CBA, in the event of a plant closing, Precoat was obligated to "meet for the purpose of negotiating severance pay . . . ." (Article 25 of CBA, Pls.' L.R. 56.1 Statement of Material Facts, Ex. B.) Significantly, this provision required only that Precoat and the Union engage in good-faith "effects bargaining," *First Nat'l Maint. Corp. v. Nat'l Labor Relations Bd.*, 452 U.S. 666, 682 (1981)—Precoat had no obligation to reach an agreement with the Union to pay severance benefits. *Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 219 (1979). In other words, Union employees did not have a contractual right to receive severance benefits under the CBA in the event of a plant closing. Instead, it was the Agreement amending the CBA that established each employee's right to receive severance benefits—a right which was explicitly conditioned on the employee executing a release of claims. Despite plaintiffs' arguments to the contrary, an employer may require employees to execute a release of claims as a condition of receiving severance benefits. Offering severance benefits in return for a general

7

release of claims is neither discriminatory nor retaliatory. *DiBiase v. Smithkline Beecham Corp.*, 48 F.3d 719, 729 (3d Cir. 1995); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 884 (5th Cir. 2003) (granting summary judgment in favor of defendants on retaliation claim where record showed that all employees were required to execute release in order to receive severance package); *Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1508 (10th Cir. 1996) (affirming judgment as matter of law for defendants on ADEA retaliation claim where only evidence showed that all employees were required to sign release in order to receive severance payment); *Bernstein v. St. Paul Co., Inc.*, 134 F. Supp. 2d 730, 733 (D. Md. 2001) ("company may condition an additional payment on the release of a filed claim, or require a waiver of future claims in exchange for a severance package"); *see also Cronin v. ITT Corp.*, 737 F. Supp. 224, 231 (S.D.N.Y. 1990) (granting summary judgment against plaintiff on retaliation claim where plaintiff did not receive severance benefits because he chose not to sign required release). In such circumstances, the severance benefits "are properly viewed as additional consideration for an employee's agreement to waive his or her rights and claims." *Equal Employment Opportunity Comm'n v. Sears, Roebuck & Co.*, 857 F. Supp. 1233, 1240 (N.D. Ill. 1994).

*Equal Employment Opportunity Commission v. Board of Governors of State Colleges and Universities*, 957 F.2d 424, 429 (7th Cir. 1992), the case on which plaintiffs rely heavily, does not compel the court to reach a different conclusion. In *Board of Governors*, the Seventh Circuit ruled that a retaliatory policy constitutes a *per se* violation of Section 4(d) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d), regardless of whether the employer acted in good faith in implementing the policy. *Id.* In *Board of Governors*, Union members had a contractual right under their collective bargaining agreement to an in-house

8

grievance procedure. *Id.* If, however, a Union member filed a claim in an administrative or judicial forum, the Board had the right to terminate the in-house grievance proceeding. *Id.* at 430. The court held that this policy was facially discriminatory because it resulted in members of a protected class losing their contractual rights to grievance proceedings if they participated in statutorily protected activity. *Id.* at 430-31. In reaching its ruling, the court quoted *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984), explaining that "'[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free . . . not to provide the benefit at all.'" *Board of Governors*, 957 F.2d at 430.

Unlike the employer in *Board of Governors*, Precoat did not withdraw plaintiffs' right to severance benefits when plaintiffs filed their discrimination claims. As explained above, at the time plaintiffs filed their discrimination claims, they had no right to severance benefits—that contractual right was created by the Agreement that amended the CBA. Had plaintiffs already been entitled to severance with no corresponding obligation to release their claims, Precoat could not have added such a condition. *Bernstein*, 134 F. Supp. 2d at 733. But here, Precoat offered consideration to which its employees were not otherwise entitled—*i.e.*, the severance benefits—in exchange for a general release of claims.[10] *Id.*; *Sears*, 857 F. Supp. at 1240.

---

[10]The court rejects plaintiffs' contention that the release was not a general release, but rather was limited to discrimination claims. (*See* Pls.' Resp. to Def.'s Mem. Supp. Mot. Summ. J. at 5-6.) According to plaintiffs, because the release provision expressly refers only to discrimination claims, only discrimination claims were released. In support of their perfunctory argument, plaintiffs cite *Ainsworth Corp. v. Cenco, Inc.*, 511 N.E. 2d 1149, 1156-57 (Ill. App. Ct. 1987). The *Ainsworth* court, faced with an ambiguous release, ruled that "when a writing contains recitals of or other reference to specific claims, and also words of general release, the words of the general release are limited to the particular claims to which reference is made." 511 N.E.2d at 1156-57. The Release in the case at bar, however, is not ambiguous. The Release

9

Nor did Precoat "dole out" severance benefits in a discriminatory fashion. In offering the severance package, Precoat did not differentiate between employees on the basis of race, national origin, or any other classification. Precoat offered severance benefits to *every* employee subject to the same condition: that the employee execute a general release of claims. A severance benefit offered to all employees and payable to all employees willing to release all claims "is an archetypical example of a facially *non*-discriminatory policy." *DiBiase*, 48 F.3d at 727.

C. **Plaintiffs Lack Evidence of Intent**

Because the Agreement is not discriminatory *per se*, plaintiffs must prove unequal treatment and intent to retaliate in order to prevail. *See id.* at 728. "[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *Rogers v. City of Chicago*, 320 F. 3d 748, 753 (7th Cir. 2003). In a retaliation case, there are two ways for a plaintiff to prevent summary judgment: the direct method and the indirect method (*i.e.*, the *McDonnell Douglas* method). *Id.* Under the direct method, there are two forms of permissible evidence, direct and circumstantial. *Id.* Direct evidence "essentially requires an admission by the decision-maker that his actions were based

---

clearly states that the employee "release[s], waive[s] and discharge[s] Employer, Precoat Metals . . . from any and all claims of any kind that I may have in any way arising out of my employment with Employer [except workers' compensation claims]. . . . This release includes, but is not limited to, all claims under federal, state or local laws prohibiting age, sex, race, national origin, disability, religion, retaliation, or any other form of discrimination, such as Age Discrimination in Employment Act." (Defs.' L.R. 56.1 Statement of Material Facts, Ex. B (emphasis added).) As the *Ainsworth* court explained, "the intent of the parties controls the scope of the release," and "when a written agreement is clear and explicit, it must be enforced as written and the parties' intent must be determined from the fact of the document." *Ainsworth*, 511 N.E.2d at 1156. Plaintiffs do not even argue the Release was ambiguous, making their reliance on principles of contract interpretation applicable in cases of ambiguity misguided. The clear and unambiguous language shows that Release is, and was intended to be, a general release of claims.

upon the prohibited animus." *Id.* (internal quotation marks omitted). There is no such admission here. Circumstantial evidence, "*i.e.*, evidence that allows a jury to infer intentional discrimination by the decisionmaker," *id.*, is also lacking. Plaintiffs cite no evidence in the record to support such an inference. In fact, plaintiff Davis admitted at his deposition that he has no knowledge whether the Agreement was discriminatory or retaliatory.[11] (Defs.' L.R. 56.1 Statement of Material Facts, ¶ 26.)

Because plaintiffs cannot defeat summary judgment under the direct method, they are left with the *McDonnell Douglas* method, which is "designed to give plaintiff[s] a boost when [they have] no actual evidence of [retaliation] but just some suspicious circumstances." *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F. 3d 640, 643 (7th Cir. 2002). To establish a prima facie case of retaliation under the *McDonnell Douglas* method, plaintiffs must show that: (1) they engaged in statutorily protected activity; (2) their job performance met their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) similarly situated employees who did not engage in statutorily protected activity received more favorable treatment than they did. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

Here, plaintiffs have failed to establish a *prima facie* case. It is undisputed that plaintiffs engaged in statutorily protected activity, so the first prong of the *McDonnell-Douglas* test is satisfied. As for the second prong, under the specific facts of this case, the job-performance element is likely inapplicable because all employees were being laid-off due to the plant closing. *See Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995) (explaining that prima facie case is a

---

[11]Plaintiffs neither admitted nor denied this fact, opting instead to object on relevance grounds. Plaintiffs were free to raise their objection in addition to, not in lieu of, providing an admission or properly supported denial. This fact is deemed admitted. *See* L.R. 56.1(b).

11

flexible standard). Regarding the third prong, according to plaintiffs, they suffered an adverse employment action because they were denied severance benefits. But assuming that denial constitutes an adverse employment action, plaintiffs cannot satisfy the fourth prong—*i.e.*, they cannot establish that other similarly-situated employees who did not engage in statutorily protected activity received more favorable treatment. To do so, plaintiffs would have to show that Precoat paid severance benefits to another employee without requiring a release of claims. It is undisputed that every employee who received severance benefits signed the Release.[12] Plaintiffs' failure to satisfy the fourth prong dooms their retaliation claim.[13] *Hilt-Dyson*, 282 F.3d at 465 (failure to establish any element of a prima facie case is fatal to a plaintiff's retaliation claim).

### D. Plaintiffs' Disparate Impact Claim

Plaintiffs also urge the court to grant partial summary judgment in their favor by finding that the terms and conditions of the Agreement setting severance benefits had a disparate impact on African-American employees. Precoat, on the other hand, argues that plaintiffs failed to raise

---

[12]Plaintiffs argue that because no other employees had claims pending against Precoat at the time of the plant closing, plaintiffs were the only ones negatively affected by the Agreement. The court disagrees. Every employee who signed the Release in exchange for the severance package gave up the right to sue Precoat for employment-related claims. Just because nobody else had a claim pending does not mean nobody else had a potential claim. Indeed, the fact that plaintiffs wanted to pursue this employment discrimination lawsuit as a class action demonstrates that plaintiffs themselves believe other Precoat employees had viable discrimination claims. By signing the Release, plaintiffs' former coworkers gave up the right to bring those claims.

[13]Plaintiffs' arguments regarding evidence of intent focus solely on retaliation, not disparate treatment. For that reason, the court has focused its analysis on retaliation as well. The court notes that plaintiffs could not have established a prima facie case of disparate treatment either, because they could not show that similarly situated individuals of another race were treated more favorably. *See Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002) (elements of prima facie case of disparate treatment).

a disparate impact claim in either the amended complaint or in their EEOC charges and therefore are precluded from raising the claim now. Additionally, according to Precoat, plaintiffs have failed to support their disparate impact claim. The court grants partial summary judgment in Precoat's favor, because even assuming plaintiffs properly raised their disparate impact claim,[14] the claim is fundamentally flawed.

Disparate impact claims under Title VII "'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive . . . is not required under a disparate-impact theory.'"[15] *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (quoting *Teamsters v. United States*, 431 U.S. 324, 335-36, n. 15 (1977)); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986-87 (1988). In such cases, the evidence "usually focuses on statistical disparities, rather than on specific incidents, and on competing explanations for

---

[14]Regarding whether the disparate impact claim is properly before the court, under Rule 8 of the Federal Rules of Civil Procedure a plaintiff is required to plead facts sufficient to give the defendant fair notice of the claims against it. Fed. R. Civ. P. 8; *Mason v. Southern Ill. Univ.–Carbondale*, 233 F. 3d 1036, 1043 (7th Cir. 2000). Similarly, in order to commence litigation in federal court alleging a violation of Title VII, a plaintiff must first file an administrative charge. 42 U.S.C. § 2000 e-5(e)(1); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (1985). According to Precoat, the first time plaintiffs raised a disparate impact claim was in the pending motions for partial summary judgment—fair notice was not given in the amended complaint, nor does the disparate impact claim fall within the scope of the charges plaintiffs filed with the EEOC. Plaintiffs disagree, contending that both the amended complaint and EEOC charges can be reasonably construed to encompass their disparate impact claim. Whether plaintiffs properly raised a disparate impact claim is a close call. The court need not decide this issue because in any event, plaintiffs' disparate claim fails.

[15]To the extent plaintiffs may have a disparate impact claim, the claim is actionable only under Title VII, not Section 1981. Section 1981 applies only to claims based on intentional discrimination. *Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991).

those disparities." *Watson*, 487 U.S. at 987. The "statistical disparities must be sufficiently substantial that they . . . raise an inference of causation." *Id.* at 995. The plaintiff bears the initial burden to show that the challenged employment practice has a *significantly* adverse impact on a protected group.[16] *Connecticut v. Teal*, 457 U.S. 440, 446 (1982) (facially neutral practice must have "significantly discriminatory impact"); 42 U.S.C. § 2000e-2 (k)(1)(A)(i) (plaintiff must demonstrate that challenged practice causes a disparate impact "on the basis of race, color, religion, sex, or national origin"). Here, plaintiffs fail to meet that burden.

According to plaintiffs, "[z]ero is the number of non-African Americans that were put in the position of either releasing/waiving discrimination claims or foregoing severance pay as a result of Precoat's policy." (Pls.' Mem. Supp. Mot. Summ. J. at 12.) Plaintiffs contend this "'inexorable zero' speaks volumes and clearly supports an inference of discrimination." (*Id.* at 13, quoting *Barner v. City of Harvey*, No. 95 C 3316, 1998 WL 664951, at *50 (N.D. Ill. Sept. 18, 1998).) There are two fatal flaws in this argument. First, plaintiffs contend that the three of them "were the sole employees to have claims that were impacted by the severance agreement." (Pls.' Mem. Supp. Mot. Summ. J. at 13.) "A neutral policy with an adverse effect on an employee or even a few employees does not constitute a prima facie case [of] disparate impact."[17] *Russell v. Enterprise Rent-A-Car Co. of Rhode Island*, 160 F. Supp. 2d 239, 259 (D.

---

[16]If a plaintiff is able to satisfy that initial burden, the burden shifts to the employer to show that the employment practice "is valid by showing that it is 'job related' and 'consistent with business necessity.'" *Bryant v. City of Chicago*, 200 F.3d 1092, 1094 (7th Cir. 2000). In the event the employer validates the employment practice, the burden shifts back to the plaintiff to establish the availability of an alternative employment practice that is equally valid and less discriminatory. *Id.*

[17]*Barner*, the case on which plaintiffs rely, is also distinguishable on its facts. *Barner* involved an intentional pattern-and-practice discrimination claim in which all 68 city employees

14

R. I. 2001); *Massarsky v. General Motors Corp.*, 706 F.2d 111, 121 (3d Cir. 1983). Even if the court agreed that the severance agreement had an unfair, adverse impact on the three plaintiffs, they have failed to establish that the severance agreement had a significant adverse impact on African-Americans as a group.

The second, more significant flaw is that although plaintiffs were the only ones who had pending discrimination claims, it does not follow that they were the only ones with discrimination claims to release. *Supra*, n. 12. Further, the release was a general release. As a result, no employee received severance benefits without first releasing any and all employment-related claims, including, but not limited to, discrimination claims. *Supra*, n. 10, 12. To put it another way, every employee, regardless of race, had to decide whether to release their claims. In *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001), a case analogous to the case at bar, the defendant employer required managers to sign an employment agreement with a non-compete clause. Those managers who did not sign the agreement were terminated. *Id.* The plaintiff argued that the requirement had an adverse impact on women, based on the fact that four women were terminated after deciding not to sign the agreement. *Id.* In affirming the district court's summary judgment ruling in favor of the employer, the Seventh Circuit held that "the policy had the same impact on male and female professionals." *Id.* If they did not sign the employment agreement, they would be terminated regardless of their gender. *Id.* Like the employment agreement in *O'Regan*, the severance agreement negotiated between the Union and Precoat had the same impact on each employee. If an employee chose not to sign the Release, he

---

separated from employment for "budgetary reasons" during a three month period were African-American. 1998 WL 665951, at *50. Unlike *Barner*, this case involves a difference between zero and three, not zero and 68.

15

would not receive the severance package, regardless of his race. It was up to each Precoat employee to weigh the pros and cons of signing the Release, and to decide whether the value of his potential claims was worth more than the severance package. The fact that plaintiffs chose not to accept the severance offer because they did not want to release their employment-related claims does not mean that the severance agreement had a disparate impact on minorities. It simply means that plaintiffs reached the opposite conclusion in their cost-benefit analysis than their former coworkers who signed the Release.

At the heart of plaintiffs' disparate impact claim is the contention that Precoat should have paid plaintiffs the severance benefits without requiring a release of claims. In taking this position, plaintiffs are essentially claiming a right to preferential treatment for anyone who had a pending discrimination claim—namely, plaintiffs. In plaintiffs' view, they should have received severance benefits while retaining the right to pursue their pending claims, even though everyone else was required to release their claims in order to receive severance benefits. Plaintiffs have no right to such preferential treatment under Title VII. *See DiBiase*, 48 F.3d at 732 (rejecting argument that employer was required to treat people preferentially in order to treat them equally).

Because no reasonable jury could find in favor of plaintiffs on their disparate impact claim, the court grants partial summary judgment in favor of Precoat.

### III. CONCLUSION

As explained above, the court denies plaintiffs' motion for partial summary judgment and grants defendant's cross-motion for partial summary judgment, finding that the severance

agreement is not discriminatory *per se*, plaintiffs lack any evidence of intent, and plaintiffs' disparate impact claim is fatally flawed.

ENTERED:

*Nan R. Nolan*

NAN R. NOLAN

United States Magistrate Judge

Dated: July 23, 2004